IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STUEVE SIEGEL HANSON WOODY LLP, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NORTHWESTERN MUTUAL LIFE ) <br> INSURANCE CO., ) <br> ) <br> Defendant. ) | No. 05-9064-MC-W-SOW |

ORDER

Before the Court are plaintiff Stueve Siegel Hanson Woody LLP's Motion to Quash Non-Party Subpoena (Doc. #1), defendant Northwestern Mutual Life Insurance Co.'s Suggestions in Opposition, and plaintiff's Reply. For the reasons stated below, plaintiff's motion is granted.

I. Background

On or around August 8, 2005, defendant Northwestern Mutual Life Insurance Co. ("Northwestern") served a subpoena on the non-party law firm Stueve Siegel Hanson Woody LLP ("Stueve Siegel"). This subpoena seeks documents for use in a lawsuit pending between Nothwestern and Policyholder Protection Services, Inc. ("PPSI") and David A. Stinnett in the United States District Court for the Southern District of Indiana. Stueve Siegel is not involved in the Indiana lawsuit; however, Stueve Siegel is representing several plaintiffs in three separate lawsuits currently pending against Northwestern: (1) *Murphy v. Northwestern Mutual Life Insurance Company, et al.*, No. 03-CV-0864, filed in the United States District Court for the Western District of Missouri; (2) *Little v. Northwestern Mutual Life Insurance Company, et al.*, No. 03-CV-07868, filed in Johnson County, Kansas District Court; and (3) *Kastrup v.*

*Northwestern Mutual Life Insurance Co., et al.*, No. 052-00403, filed in the Circuit Court of the City of St. Louis, Missouri.

In each of the pending cases, Stueve Siegel has alleged, on behalf of its clients, that Northwestern has engaged in widespread fraud by selling variable life insurance policies as "retirement plans." Plaintiff Stueve Siegel argues that the subpoena issued to it by defendant Northwestern should be quashed because it does not seek information relevant to the Indiana lawsuit, seeks information protected by the attorney-client and attorney work product privileges, is unduly burdensome, and has been filed merely to harass Stueve Siegel. Stueve Siegel claims that the information sought by Northwestern would reveal Stueve Siegel's strategy in the three pending lawsuits.

Defendant Northwestern takes the position that Stinnett and PPSI have engaged in the criminal solicitation of lawsuits in Indiana, Missouri, and other states throughout the country. Defendant states that while Stueve Siegel may be innocent of any improper conduct, it is in the middle of the dispute regarding Stinnett and PPSI's practices because Stueve Siegel's current clients have ties to Stinnett and PPSI.

II. Standard

Federal Rule of Civil Procedure 45(c)(3)(A) mandates that a subpoena shall be quashed if it "requires disclosure of privileged or other protected matter" or if it "subjects a person to undue burden." Federal Rule of Civil Procedure 45(c)(3)(B) allows this Court to quash a subpoena if it "requires disclosure of an unretained expert's opinion or information . . . ." The United States Court of Appeals for the Eighth Circuit has held that non-parties should be afforded "'special protection against the time and expense of complying with subpoenas'" Misc. Docket Matter #1

v. Misc. Docket Matter #2, 197 F.3d 922, 927 (8th Cir. 1999)(internal citations omitted).

III. Discussion

Stueve Siegel moves to quash the entire subpoena; however, Stueve Siegel states in its Motion to Quash that it does not have any documents responsive to Categories 1, 2, and 6 of the subpoena.

A. Category 3

In Category 3 of the subpoena, Northwestern seeks documents "relating to or reflecting any communications between" Stueve Siegel, PPSI, Stinnett, and others. The subpoena states that "This includes, without limitation, correspondence, memos, emails, or other documents of any kind reflecting such communications. YOU MUST PROVIDE AN ELECTRONIC VERSION OF ANY SUCH EMAILS OR DOCUMENTS IN YOUR POSSESSION BY DOWNLOADING THEM TO A CD OR DVD."

Stueve Siegel states that if it contacted PPSI, it would only have been to further investigate the claims made by its clients or to potentially establish an expert relationship with PPSI. Therefore, Northwestern is not entitled to any documents relating to or reflecting any such communications.

If Stueve Siegel contacted PPSI, Stinnett, or others to investigate the claims being made by Stueve Siegel clients, the documents relating to or reflecting such communications are protected by the attorney-client and/or attorney work product privileges. Such documents would reveal the mental impressions and possibly legal conclusions of Stueve Siegel's attorneys. Stueve Siegel argues that requiring it to disclose such documents would materially impact its ability to represent its clients in the three lawsuits currently pending against Northwestern in

which Stueve Siegel represents the plaintiffs.

To the extent Stueve Siegel contacted PPSI about establishing an expert relationship, the communications would be ones with a non-retained or non-testifying expert. The Federal Rules of Civil Procedure do not allow opposing counsel to generally obtain information regarding non-testifying or non-retained experts. Fed.R.Civ.Pro. 45(c)(3)(B). *See also*, Ager v. Jane C. Stormont Hospital and Training School for Nurses, 622 F.2d 496, 503 (10th Cir. 1980).

Defendant Northwestern states that it is seeking the information specified in Category 3 "to explore evidence of PPSI's illegal solicitation efforts, as well as PPSI's engagement in the unauthorized practice of law."

The Court finds that Northwestern's subpoena is not tailored to discover such information. The subpoena is overly broad, seeking documents "reflecting and relating to ***any*** communications between" Stueve Siegel, PPSI, Stinnett, and others (emphasis added). This would include memos or emails between attorneys at Stueve Siegel about any such communications. The subpoena asks for information clearly protected by the attorney work product privilege.

Even if Stueve Siegel has had communications with PPSI, Stinnett, and others, Northwestern could obtain information about these communications from PPSI in the course of discovery in the Indiana lawsuit.

B.    Category 4 and Category 5

In Category 4 of the subpoena, Northwestern seeks "non-priveleged documents reflecting the dates you were retained by any person who made a claim against Northwestern Mutual or consulted with you about a possible claim against Northwestern Mutual, and reflecting the

identity of such individuals." In Category 5, Northwestern seeks "documents relating to or reflecting any communications between you and any non-client concerning any actual, threatened or potential claims against Northwestern Mutual."

Stueve Siegel argues that this request amounts to a fishing expedition to discover the names of individuals who may or may not end up suing Northwestern. To the extent that the subpoena seeks information about the dates current clients retained Stueve Siegel, Stueve Siegel's internal conflict check system, retention agreements, and attorneys' notes of initial client interviews, such documents are protected by the attorney-client privilege. Any conversations Stueve Siegel may have had with other potential clients is also protected. *See* ABA Model Rules of Professional Conduct Rule 1.18(b).

Northwestern suggests that production of documents reflecting communication with non-client third parties is "necessary to explore the nature and extent of the concerted activities of PPSI and the referral fee attorneys with whom it has consorted . . . ." There is no indication that Stueve Siegel are such "referral fee attorneys." It is unclear why disclosure of the identities of other potential clients of Stueve Siegel would assist Northwestern in exploring the alleged activities between PPSI and other referral fee attorneys.

Finally, Stueve Siegel would only know if its current or potential clients were ever in contact with PPSI or viewed the PPSI website as a result of its confidential communications with its clients or potential clients. Such information is protected. United States v. Sindel, 53 F.3d 874, 876 (8th Cir. 1995). The Court also finds that the subpoena is overly broad, asking not only for the identities of clients and potential clients, but also "log entries, calendar entries, conflict checks, and retention agreements" as well as "any communications between" Stueve Siegel and

5

any potential client.

C.  Category 7

In Category 7 of the subpoena, Northwestern asks Stueve Siegel to produce documents "relating to or reflecting any solicitation advertisements concerning potential claims against Northwestern Mutual, either published by you, or by anyone affiliated with PPSI." Any independent actions that Stueve Siegel took on its own to find clients who have allegedly been misled by Northwestern cannot have any possible relevance to the Indiana lawsuit. Furthermore, Stueve Siegel has already produced its advertising information to Northwestern in connection with the *Murphy* case.

To the extent Northwestern seeks documents relating to advertising published by PPSI or its affiliates, it should seek discovery from said entities.

D.  Category 8

Northwestern also seeks documents "reflecting any detailed telephone bills reflecting the dates, times and details of any telephone contact (attempted or completed) between [Stueve Siegel], Stinnett, Johns, Sharp, Huebner, Meyer, or any other person associated with PPSI, including without limitation personal and business telephone billings, and cell phone billings for the persons associated with your firm that made or received such calls."

Stueve Siegel states that this request seeks documents from 1999 through the present. The law firm of Stueve Siegel did not even exist until 2001. Stueve Siegel adds that the request seeks telephone records going back three years prior to the date the first plaintiff retained Stueve Siegel to pursue claims against Northwestern. On its face, this request is overly broad.

In addition, Stueve Siegel states that this request would require Stueve Siegel to review

6

thousands of pages of telephone records and extensive redaction of said records. This would be unduly burdensome given the limited relevance of this information.

IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that plaintiff Stueve Siegel Hanson Woody LLP's Motion to Quash Non-Party Subpoena (Doc. #1) is granted. The Court declines to award sanctions to Stueve Siegel.

        /s/Scott O. Wright
        SCOTT O. WRIGHT
        Senior United States District Judge

Dated: 9-29-05